# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. |
| v. | 1:18-CR-00369-WMR |
| ALFONZO LEWIS. | |

## ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R & R") [Doc. 56], which recommends that Defendant's motions to suppress evidence and statements [Docs. 19, 20, and 25] be DENIED. Defendant filed objections in response to the R & R [Doc. 58]. Following the Magistrate Judge's issuance of the R & R, this Court held an evidentiary hearing on November 7, 2019 [*see* Doc. 62]. Upon consideration of the R & R, Defendant's objections, and oral argument at the hearing on November 7, 2019, the Court enters the following Order.

## I. LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the R & R for clear error if no objections are filed by either party within 14 days after service. 28 U.S.C. § 636(b)(1). If a party does file objections, the Court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. *Id*;

Fed. R. Civ. P. 72(b)(3).  Since Defendant filed timely objections to the R & R in this case, the Court reviews the challenged portions of the R & R *de novo* and the remainder of the R & R for clear error.

## II.   FACTUAL BACKGROUND

The factual background of this case is set forth in detail in the R & R, and those facts are fully incorporated herein by reference.  [*See* Doc. 56].  To summarize, on December 14, 2015, Michael Hannan, a task force officer ("TFO") with the High Intensity Drug Trafficking Area ("HIDTA") group, was monitoring a surveillance camera set up at a residential location believed to be used by a drug trafficking organization.  While monitoring the camera from his office, TFO Hannan observed a black Suburban arrive and park in the driveway.  He then observed two black males exit the vehicle.  TFO Hannan watched as Defendant retrieved a brown bag from the back passenger seat of the vehicle and walk toward the residence.  Based on TFO Hannan's experience and observations, he felt this was likely a customer picking up narcotics.

Thereafter, TFO Hannan contacted Lieutenant Corey Henry ("Lt. Henry"), a sergeant and a member of the K-9 unit at the time of the incident in question.  TFO Hannan informed Lt. Henry that he was observing a residence and there was a chance that a vehicle would be leaving that residence with a quantity of narcotics.  TFO

Hannan asked Lt. Henry to make a traffic stop on the vehicle if he could obtain probable cause through a traffic violation. After Lt. Henry said he was available to assist, TFO Hannan instructed him to go and wait at the Lakewood MARTA station, which was located near the residence under surveillance. TFO Hannan and other investigators also headed toward the residence and continued monitoring the surveillance camera with a laptop.

After observing the arrival and departure of two subjects of the drug trafficking investigation, TFO Hannan observed Defendant and a second black male walk toward the Suburban. The black male entered the driver's seat, and Defendant placed the brown bag in the back seat before entering the front passenger seat. The Suburban then departed from the residence. After these observations, TFO Hannan advised Lt. Henry that the Suburban, providing a description and tag number, was leaving the residence and contained two black male occupants.

Lt. Henry testified that as he initially followed the Suburban, at approximately 5:30 p.m., there was moderate traffic, which thinned out as he traveled further south. Lt. Henry was in his marked patrol car, which was not equipped with a camera or audio equipment. He also did not have a body camera. Kojak, Lt. Henry's full-service K-9 trained to detect illegal narcotics, and FCSO Deputy Bryon Thomas were also present.

3

After following the Suburban for approximately three miles and using his calibrated speedometer, Lt. Henry determined that the Suburban was traveling at a rate of 83 miles per hour. The speed limit was 70 miles per hour. Lt. Henry did not immediately conduct a traffic stop because he was waiting for Georgia State Patrol Trooper Jordan Ennis to arrive to assist.[1] After Trooper Ennis began approaching, Lt. Henry activated his lights and siren and caught back up with the Suburban. Trooper Ennis also activated his lights and siren.

The Suburban initially stopped in the left travel lane with both police vehicles behind it. At the direction of Lt. Henry, the Suburban moved over to the right shoulder of the highway. Lt. Henry and Deputy Thomas exited the patrol car and approached the Suburban; Lt. Henry approached the driver's side window, and Deputy Thomas approached the passenger's side. The driver's side window of the Suburban was rolled down, and Lt. Henry spoke with the driver.

While speaking with the driver, Lt. Henry testified that he detected the smell of burnt marijuana. Lt. Henry took the driver's license back to his patrol car to conduct a license check and start a traffic citation. Before completing the citation,

---

[1] Lt. Henry contacted Trooper Ennis in case the occupants of the Suburban attempted to flee. Per Department policy, Lt. Henry cannot pursue a fleeing vehicle, but Troopers may do so.

Lt. Henry went back to the Suburban and asked the driver to get out of the vehicle and walk to its rear. Defendant remained in the Suburban.

While standing outside of the vehicle, Lt. Henry asked the driver if there was marijuana in the vehicle, to which the driver responded no. Lt. Henry testified that the driver stated he had smoked marijuana earlier that day. Thereafter, Lt. Henry informed the driver that a probable cause search of the Suburban would be conducted. Defendant was removed from the vehicle, and Deputy Thomas and Trooper Ennis stood with the men while Lt. Henry conducted a search.

During his search of the Suburban, Lt. Henry discovered a brown bag on the floorboard of the back passenger seat. He opened the bag and found five-kilogram packages of suspected cocaine. Lt. Henry left the bag inside of the Suburban and returned to his patrol car, where he advised Deputy Thomas and Trooper Ennis to detain the driver and Defendant. Both men were handcuffed outside of the vehicles. Neither man was advised that he was under arrest. Lt. Henry then retrieved the brown bag and began carrying it to his patrol car. Defendant stated that the bag was his. No other contraband was discovered in the Suburban.

Lt. Henry then contacted TFO Hannan to let him know about the cocaine discovery and to inform him that Defendant claimed the bag. TFO Hannan instructed Lt. Henry to allow the driver to leave but to place Defendant under arrest.

Thereafter, Defendant was placed under arrest and advised of his Miranda rights. Defendant elected to waive his rights and prepared a written statement. Defendant was then placed into a patrol car for transport to the Fulton County jail. Before his transport, Lt. Henry called TFO Hannan to let him know that Defendant had requested to speak with law enforcement about information he had. The traffic stop was cleared at 8:30 p.m. when the last officer left the scene.

TFO Hannan and TFO Matthew Dembowski met with Defendant at the Fulton County jail later that day. Defendant was again read his Miranda rights and advised he had a right to remain silent, to which he responded that he understood his rights and wished to make a statement. Neither officer was armed during this questioning, and Defendant never asked to stop the interview.

The Fulton County District Attorney initially prosecuted Defendant on drug charges based on the seizure of cocaine on December 14, 2015. Defendant moved to suppress the evidence, and the Superior Court Judge initially and on reconsideration denied the motion to suppress. On a second motion for reconsideration, the Superior Court Judge granted the motion for reconsideration and the motion to suppress. The Superior Court Judge subsequently dismissed the state charges on November 1, 2017.

Defendant was indicted by a federal grand jury in the Northern District of Georgia on September 18, 2018. [Doc. 1]. The Magistrate Judge held an evidentiary hearing on Defendant's motions to suppress on May 21, 2019. [*See* Doc. 35]. Following the evidentiary hearing, the Magistrate Judge issued its R & R recommending that this Court deny Defendant's motions to suppress. [Doc. 56]. This Court held a second evidentiary hearing on November 7, 2019.[2] [*See* Doc. 62].

## III. DISCUSSION

Defendant makes four objections to the R & R: (1) that the Magistrate Judge "gives considerable weight to Lt. Henry's testimony" and ignores inconsistencies in his testimony at previous hearings; (2) that the Magistrate Judge wrongly concludes there was probable cause for the traffic stop based on a traffic violation; (3) that "all of Defendant's subsequent statements should be inadmissible because they were tainted by the unlawful stop"; and (4) that "the Government should be precluded from introducing evidence from the stop because the legality of the stop was previously decided by the Fulton County Superior Court." [Doc. 58 at 2-3]. The Court addresses each objection below.

---

[2] After this Court directed the parties to appear for the evidentiary hearing, the Government moved this Court to reconsider its decision to schedule the hearing. [*See* Doc. 60]. On October 22, 2019, this Court denied the Government's Motion for Reconsideration and notified the parties that the evidentiary hearing would take place on November 7, 2019, as scheduled. [Doc. 61].

### A. Lt. Henry's testimony is credible.

Defendant first objects to the Magistrate Judge's conclusion that Lt. Henry's testimony was credible and the inconsistencies in his testimony in previous hearings should be ignored. [*See* Doc. 58 at 3-4]. This Court had concerns regarding Lt. Henry's credibility in light of the fact that two different Judges, the Fulton County Superior Court Judge and the Magistrate Judge, reached opposite conclusions on this issue. [*See* Doc. 56; Doc. 42-1]. In order to make a *de novo* determination as to the credibility of the Government's witnesses, including the credibility of Lt. Henry, this Court held its own evidentiary hearing on November 7, 2019. [*See* Doc. 62].

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citing *Viehman v. Schweiker*, 679 F.2d 223, 227-28 (11th Cir. 1982)). In weighing credibility, a court takes "into account the interests of the witnesses, the consistencies or inconsistencies in their testimonies, and their demeanor on the stand." *Id.* at 750.

Upon review of the Magistrate Judge's findings and the testimony presented at the evidentiary hearing on May 21, 2019, and having personally observed Lt. Henry testify at this Court's evidentiary hearing on November 7, 2019, the Court

concludes that Lt. Henry is credible. Lt. Henry, during both evidentiary hearings, testified that TFO Hannan asked if he was available to assist with a traffic stop on December 14, 2015. [Doc. 40 at 52:12-13]. Lt. Henry stated that he was asked to conduct a traffic stop of the Suburban if probable cause developed. [*Id*. at 52:16-17]. After acquiring a visual of the Suburban, Lt. Henry testified that he began to follow it. [*Id*. at 54:19-20]. By pacing the vehicle and using his calibrated speedometer, Lt. Henry determined that the Suburban was exceeding the 70 miles per hour speed limit. [*Id*. at 55:15-25, 56:1-3]. After conducting a traffic stop, Lt. Henry testified that he approached the driver's side of the vehicle and spoke with the driver. [Id. at 58:21-25, 59:1]. While speaking with the driver, Lt. Henry testified that he smelled the odor of burnt marijuana. [*Id*. at 59:12-16, 60:19-22]. No other officer present during the traffic stop disputes Lt. Henry's testimony that he stopped the Suburban because he determined it was speeding or that he smelled burnt marijuana while speaking with the driver.

In his objections, Defendant argues that the Magistrate Judge ignored Lt. Henry's failure to inform the Fulton County Superior Court Judge that he was instructed to perform the traffic stop by HIDTA agents and that "there was no evidence presented that supported Lt. Henry['s] assertion that the vehicle . . . violated any traffic laws." [Doc. 58 at 4-5]. Lt. Henry testified, however, that he determined

the Suburban was speeding by pacing the vehicle and using his speedometer, and Defendant did not put forth any evidence rebutting this testimony. Thus, having personally observed Lt. Henry's testimony and considering the totality of the circumstances, including the lack of any testimony from other witnesses disputing Lt. Henry's testimony, the Court finds Lt. Henry's testimony is credible.

B. **There was probable cause for the traffic stop.**

Defendant further objects to the Magistrate Judge's finding that there was probable cause to support the traffic stop. [*See* Doc. 58 at 4-5].[3] Defendant argues that no traffic violation occurred, explaining that the only evidence of a traffic violation was Lt. Henry's testimony, which Defendant contends lacks credibility. As explained above, however, this Court finds that Lt. Henry's testimony is credible. As such, Lt. Henry's undisputed testimony that he determined the Suburban was exceeding the applicable speed limit by pacing the vehicle and using his patrol car's calibrated speedometer is sufficient to establish probable cause to stop the Suburban

---

[3] The Court notes Defendant does not object to the Magistrate Judge's finding that there was probable cause to conduct a warrantless search of the Suburban after Lt. Henry smelled the odor of burnt marijuana. Defendant objects only to the Magistrate Judge's conclusion that there was probable cause to conduct the traffic stop. [*See* Doc. 58 at 4-5]. As such, this Court will not review, *de novo*, the Magistrate Judge's determination that the search of the vehicle was proper. Upon review of that conclusion for clear error, this Court finds the search of the vehicle was lawful based on Lt. Henry's undisputed testimony that he detected the smell of burnt marijuana.

for the traffic infraction of speeding. *See United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("[L]aw enforcement 'may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles.'" (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990))); *Disharoon v. State*, 263 Ga. App. 787, 789 (2003) ("Because the officer personally observed Disharoon committing a traffic offense, namely speeding, he had probable cause to stop her car." (citation omitted)); *see also* O.C.G.A. § 40-6-181(b)(2) ("[N]o person shall drive a vehicle at a speed in excess of the following maximum limits: . . . Seventy miles per hour on a highway on the federal interstate system . . . provided that such speed limit is designated by appropriate signs.").

Additionally, any other motive Lt. Henry may have had in conducting this stop does not invalidate his objectively justifiable decision to stop the Suburban for a speeding infraction. *See United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) ("When determining whether an officer had probable cause to believe that a traffic violation occurred, the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." (internal quotation and citation omitted)).

As the Court has determined there was probable cause to support the traffic stop, the Court does not reach the issue of whether Lt. Henry had reasonable suspicion that the occupants of the Suburban were engaged in criminal activity in order to make an investigative stop of the vehicle. Thus, the Court makes no determination as to the Magistrate Judge's findings on reasonable suspicion.

## C. Defendant's statements are admissible because the stop was lawful.

Defendant further contends that his statements, made subsequent to the traffic stop, are inadmissible because "they were tainted by the unlawful stop." [*See* Doc. 58 at 5]. Although Defendant does not outline the specific statements at issue in his objections, in his prior briefing, Defendant seeks to suppress statements made during the traffic stop, including a statement claiming ownership of the brown bag, and statements made at the Fulton County Jail. [Doc. 42 at 11-12]. Because the Court finds that the traffic stop was lawful, however, Defendant's third objection is meritless. *See United States v. Lopez-Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) (The defendant's "Fourth Amendment fruit of the poisonous tree argument plainly collapses since . . . his Fourth Amendment rights were never violated."). As such, the Court concludes that Defendant's statements are admissible.

### D. The Government can introduce evidence obtained during the lawful stop.

Defendant's last objection argues that the Government should be precluded from introducing evidence obtained during the traffic stop because "the legality of the stop was previously decided [by] the Fulton County Superior Court." [Doc. 58 at 6]. Specifically, Defendant contends the Government is barred from introducing the evidence "based on privity between the State and Federal governments." [*Id*.]. This Court disagrees.

First, whether issue preclusion or collateral estoppel is applicable in this context remains an open question. *See United States v. Perchitti*, 955 F.2d 674, 675 (11th Cir. 1992) ("Whether issue preclusion may apply in the criminal context to bar one governmental entity from relitigating a pretrial suppression order previously rendered against another governmental entity is an open question."). And, although an open question, some decisions by the United States Court of Appeals for Eleventh Circuit indicate that federal courts are not bound by state criminal court decisions. *See, e.g., United States v. One Piece of Real Property Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1101, n.1 (11th Cir. 2004) (stating that "[f]ederal courts . . . are not bound by the state court's decision" in a case where a defendant was initially prosecuted by state authorities relating to the seizure of marijuana and drugs from his residence, and the state court suppressed the evidence, but was subsequently

involved in a forfeiture action brought by the United States in federal court, during which the defendant again moved to suppress the evidence); *United States v. Mastrangelo*, 733 F.2d 793, 798-99 (11th Cir. 1984) (rejecting an argument that collateral estoppel bars the use of evidence obtained during arrests by state police officers in a federal case).

Second, even assuming the doctrine of collateral estoppel is applicable, this Court finds that the doctrine's requirements are not met in this case. For issue preclusion to apply, the following factors must be met:

> (1) the issue in the case must be identical to the one previously litigated; (2) the issue must have been actually litigated in the earlier lawsuit; (3) the determination of the issue in the prior suit was a necessary part of the judgment in that action; and (4) the parties are the same or in privity with each other and the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Harvey v. United States*, 770 F. App'x 949, 954 (11th Cir. 2019) (internal quotations and citation omitted). "A party need only identify 'one material differentiating fact that would alter the legal inquiry' to overcome issue preclusion." *Id*. (quoting *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003)).

Here, the Court finds there is a lack of privity between the state and federal prosecuting authorities. In order to find privity, there must be evidence of "[i]nvolvement of the United States equivalent to control of the state criminal prosecution." *United States v. Nasworthy*, 710 F. Supp. 1353, 1355 (S.D. Fla. 1989).

The Eleventh Circuit has explained that "[p]rivity may be found where a non-party substantially controls, or is represented by, a party to the action," where "the party estopped [is] so closely related to the interest of the party to be fairly considered to have had his day in court," or where these is "a substantial identity of the parties such that the party to the action was the virtual representative of the party estopped." *Perchitti*, 955 F.2d at 676 (internal quotations and citations omitted).

In the *Perchitti* case, on which Defendant relies, the defendants argued that privity was met because the prosecutor in the state action was later appointed as Special Assistant Attorney for the prosecution of the federal case. *Id*. at 677. The Eleventh Circuit rejected the defendants' argument because the prosecutor did not wear "both hats simultaneously." *Id*. The defendants also argued that federal DEA agents actively participated in and directed the state's investigation. *Id*. The evidence of cooperation included the state police officers' reliance on background information provided by DEA agents in the state's application to initiate electronic surveillance of the defendants' phones. *Id*. The Eleventh Circuit again rejected this argument, stating that "[t]his level of cooperation between federal and state authorities . . . does not establish privity between the state and federal governments for purpose of prosecution." *Id*.

In the present case, the traffic stop and subsequent search of the Suburban was not conducted by federal agents. There is no suggestion that federal prosecutors were involved in the state prosecution or the suppression hearing in state court. Additionally, there was no overlap between the state and federal prosecutions, as the federal indictment against Defendant was filed almost one year after the state case against Defendant was dismissed. [*See* Doc. 1]. Therefore, the Court finds that there is no privity between the state and federal prosecuting authorities, and the doctrine of collateral estoppel does not bar the Government from using the evidence obtained during the lawful stop. Because the Court finds there is no privity, the Court need not address the remaining collateral estoppel factors.

## IV. CONCLUSION

After consideration of the R & R [Doc. 56], Defendant's objections [Doc. 58], and oral argument at the evidentiary hearing on November 7, 2019 [*see* Doc. 62], the Court receives the R & R with approval and adopts its findings and legal conclusions as the opinion of this Court.[4] Accordingly, Defendant's Motion to Suppress Evidence [Doc. 19], Defendant's Motion to Suppress Statements of

---

[4] As outlined above, this Court makes no findings regarding reasonable suspicion, as it concludes there was probable cause to conduct the traffic stop. As such, the Court does not adopt those portions of the Magistrate Judge's R & R.

Defendant [Doc. 20], and Defendant's Amended Motion to Suppress Illegally Obtained Evidence [Doc. 25] are **DENIED**.

**IT IS SO ORDERED**, this 19th day of December, 2019.

_____
WILLIAM M. RAY, II
United States District Court Judge
Northern District of Georgia